278 F.2d 264
 DEEP SOUTH BROADCASTING COMPANY, a corporation, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
The Broadcasting Company of the South, Capital Broadcasting Company, Intervenors.
 No. 15257.
 United States Court of Appeals District of Columbia Circuit.
 Argued January 5, 1960.
 Decided April 14, 1960.
 
 Mr. Charles S. Rhyne, Washington, D. C., with whom Messrs. Eugene F. Mullin, Jr., and Charles A. Dukes, Jr., Washington, D. C., were on the brief, for appellant.
 Mr. Richard M. Zwolinski, Counsel, Federal Communications Commission, with whom Messrs. Edgar W. Holtz, Associate General Counsel, Federal Communications Commission, Max D. Paglin, Asst. General Counsel, Federal Communications Commission, and James T. Brennan, Counsel, Federal Communications Commission, were on the brief, for appellee. Mr. John L. FitzGerald, General Counsel, Federal Communications Commission, and Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, also entered appearances for appellee.
 Mr. Vincent A. Pepper, Washington, D. C., with whom Mr. Donald P. MacDonald, Washington, D. C., was on the brief, for intervenor Capitol Broadcasting Company.
 Messrs. Thomas H. Wall and John A. Rafter, Washington, D. C., were on the brief for intervenor, The Broadcasting Company of the South. Messrs. William P. Sims, Jr., and Francis X. McDonough, Washington, D. C., also entered appearances for intervenor, The Broadcasting Company of the South.
 Before EDGERTON, BAZELON and BURGER, Circuit Judges.
 BAZELON, Circuit Judge.
 
 
 1
 Appellant, Deep South Broadcasting Company, has a construction permit for a new commercial television station at Selma, Alabama. This appeal is from a decision of the Federal Communications Commission released September 8, 1958, which denied appellant's application for modification of the construction permit in respect to power, antenna height, and antenna location; also from the Commission's memorandum opinion and order released June 12, 1959, which denied appellant's petition for reconsideration.
 
 
 2
 Appellant urges five errors: two upon procedural matters, two upon the Commission's substantive findings, and one upon the Commission's statutory authority.
 
 
 3
 The first procedural error alleged relates to § 309(b) of the Communications Act.[1] No objection is made to the Commission's designation of the issues upon appellant's application to modify the outstanding construction permit for hearing. Subsequently, however, the Commission granted several petitions to intervene and found that these intervenors had raised a substantial question concerning Deep South's financial qualification to construct a structurally suitable tower. It thereupon enlarged the hearing to include this issue without giving appellant a second notice and opportunity to reply pursuant to § 309(b). Appellant complains about this lack of notice. The Commission contends that by its terms § 309(b) does not apply to the enlargement of issues once a hearing has been formally set in accordance with its requirements.[2] We need not decide this question since appellant was not prejudiced in any event. It had an opportunity to, and did in fact, respond to intervenors' motions to add the financial issue to those already set for hearing. "Designations for hearing, like pleadings under modern procedure, are for the purpose of reasonably apprising the party of the issues involved, and are not to be struck down for non-prejudicial deficiencies." Mansfield Journal Co. v. Federal Communications Commission, 1950, 86 U.S.App.D.C. 102, 110, 180 F.2d 28, 36. Clearly, appellant was fully aware throughout the hearing that the financial question was in issue.
 
 
 4
 The second alleged procedural irregularity is the Commission's failure to make findings and conclusions upon "other issues" even though it determined that the application must be denied on the grounds that appellant was financially unqualified. Section 8(b) of the Administrative Procedure Act, upon which appellant relies, contains no such requirement.[3] An agency, like a court, need not decide questions which are not relevant to its decision.
 
 
 5
 The appellant's attacks upon the Commission's findings are also without merit. Appellant abandoned its original proposal to build the tower for $131,000 through Vulcan Tower Company, a partnership composed of the two principal stockholders of Deep South. Instead, it attempted to show that it would buy the tower for $200,000 from its principal supplier of broadcasting equipment, Standard Electronics. Standard, in turn, was to purchase the tower from Vulcan at $190,000. The appellant stated that Standard had orally agreed to advance Vulcan $190,000 as "a loan" with which to build the tower. But the Commission found that Standard had made no such commitment. We cannot accept appellant's argument that this finding was contrary to the weight of the evidence.
 
 
 6
 Appellant says that, even if Standard had not agreed to advance Vulcan the funds necessary to construct the tower, the record demonstrates that each of the principal stockholders in Deep South (the partners in Vulcan) are personally able to supply the necessary money. While the Commission found that these men were capable of financing the undertaking, it also found that they had not demonstrated a willingness to commit so large a portion of their personal fortunes to the venture.[4] There is no basis for disturbing this finding.
 
 
 7
 The other finding under attack concerns the Commission's second ground of decision: namely, the appellant's failure to show that it could build a structurally sound tower almost 2,000 feet in height, or 400 feet taller than any man-made structure,[5] twice as high as the Eiffel Tower or half again as tall as the Empire State Building. To establish the structural suitability of its tower, appellant relied upon the drawings prepared by one of its principal stockholders, Mr. Brennan, a structural engineer, and its conformity with a document published by the Radio-Electronics Television Manufacturers' Association (RETMA Standard — TR 116). In rebuttal one of the intervenors presented evidence through Mr. Edward Staubitz, an experienced tower engineer and chairman of the committee which drafted the RETMA document in 1945. He testified that the committee had not concerned itself with towers over 1,000 feet in height, and that Mr. Brennan's plans failed to take into account the wind resistance which the tower and its accessories would present. The testimony of neither witness appears wholly convincing. But it does not follow, as appellant urges, that the Commission erred in finding that appellant failed to sustain its burden of showing that its proposal was structurally sound.
 
 
 8
 Finally, we reject appellant's challenge to the Commission's statutory authority to inquire into a tower's structural suitability. Aside from its authority to determine an applicant's technical competence to operate a television station,[6] and to ascertain whether licensed installations conform to the Commission's construction regulations,[7] the ability of a licensee to build a tower which will be safe and will provide uninterrupted service is a clearly relevant public interest consideration.
 
 
 9
 We fully agree with our dissenting colleague that a proceeding of this kind "is not intended to be adversary in nature" and that the Commission should assist applicants in making a record which will enable it to make an intelligent public interest determination. There is no evidence or claim, however, that the Commission has information relevant to high towers which it has not made available to the appellant. And there is nothing to indicate that sufficient information and experience are yet available to the Commission for the purpose of formulating engineering standards governing the construction of such high towers.
 
 
 10
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 That section reads in pertinent part:
 "If upon examination of any such application the Commission is unable to * * * [find that the public interest, convenience and necessity would be served by the granting thereof] it shall forthwith notify the applicant and other known parties in interest of the grounds and reasons for its inability to make such finding. Such notice, which shall precede formal designation for a hearing, shall advise the applicant and all other known parties in interest of all objections made to the application as well as the source and nature of such objections. Following such notice, the applicant shall be given an opportunity to reply. If the Commission, after considering such reply, shall be unable to make the [necessary] findings, * * * it shall formally designate the application for hearing on the grounds or reasons then obtaining." [48 Stat. 1085 (1934), as amended, 47 U.S.C.A. § 309(b) (emphasis supplied).]
 
 
 [2]
 See italicized portion of statute quoted at note 1, supra. The Commission contends that this interpretation reflects its previous practice. See Fox Valley Broadcasting Co., 17 Pike & Fischer Radio Regs. 841 (1958)
 
 
 [3]
 That section reads in pertinent part:
 "All decisions * * * shall become a part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record." [60 Stat. 242 (1946), 5 U.S.C.A. § 1007 (b).]
 
 
 [4]
 One of the principal stockholders of Deep South, Mr. Brennan, testified he was willing to commit himself "for $100,000 in excess of * * * [what] I am already committed for * * *." Mr. William Benns, Jr., the other principal stockholder, said he would "assist thecorporation financially if it became necessary." But in view of the fact that Mr. Benns had only $90,150 in uncommitted liquid assets and the tower would cost $190,000, we cannot say that the Commission erred in concluding that his commitment was too vague to justify the inference that he would commit the entire balance of his personal fortune to the partnership venture.
 
 
 [5]
 A 1,610 foot television tower in Roswell, New Mexico, is the world's tallest man-made structure. N.Y. Telegram, World Almanac 704 (1958)
 
 
 [6]
 48 Stat. 1089 (1934), as amended, 47 U.S.C.A. § 319(a)
 
 
 [7]
 48 Stat. 1082 (1934), as amended, 47 U.S.C.A. § 303(n)
 
 
 
 11
 BURGER, Circuit Judge (dissenting).
 
 
 12
 I would remand the case to the Federal Communications Commission with directions to incorporate in the record all information which it has in its possession relating to the cost and engineering and structural characteristics of towers in the range of 1000 to 2000 feet and to reconsider the application in light of that information.
 
 
 13
 A hearing of this kind is not intended to be adversary in nature, even though the burden is on the petitioner to establish a factual and legal basis for the relief sought. On the basis of the present record it appears that no towers have been constructed as high as 2000 feet. This alone would indicate that the petitioner has a heavy burden and it is doubtful if he has met that burden. One signal tower has been constructed to a height of 1610 feet but there is nothing in the record as to engineering, structural or other characteristics of that tower or its cost. While a tower of 2000 feet strains the inexpert imagination, it seems to me that new developments are not encouraged by an attitude on the part of the Commission that a petitioner proposing such a tower must prove its feasibility without the aid of information possessed by the Commission; if the Commission has any information which would shed light on the total subject under inquiry, i. e., the engineering specifications, physical characteristics, cost, hazards to aerial navigation, etc., all this should be made part of the record in the interest of affording a basis for an intelligent decision. Nor should we be called upon to review the subject unaided by the Commission's accumulated information and experience. The frequently mentioned "expertise" of administrative agencies is not to be regarded as a means by which evaluations can be made on important evidentiary matter in the knowledge or possession of the Commission but not readily available to the public or the industry.
 
 
 14
 The record made by the petitioner is admittedly not a strong one in support of its application for so drastic an innovation as a signal tower more than three times the height of the Washington Monument, but this does not justify the Commission's failure to make available to the parties — and to this court — all relevant information which it possesses concerning high signal towers. An applicant seeking modification of its equipment in new and uncharted areas of scientific or engineering developments is entitled to know how high is the hurdle he must jump.